E.D.S. CONSTRUCTION
COMPANY, Appellant,

v.

NORTH END HEALTH CENTER,
INC., Respondent.

No. C7–87–603.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Denied Nov. 18, 1987.

Jack D. Elmquist, Minneapolis, for appellant.

John A. Pecchia, Butler & Pecchia, P.A., St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from the district court's denial of a motion by appellant E.D.S. Construction Company (E.D.S.) to vacate an arbitration award and its grant of a cross motion by respondent North End Health Center, Inc. (North End) to confirm that award.

On appeal, E.D.S. contends that the arbitrator exceeded his powers by awarding damages which are punitive in nature and by ordering it to provide North End with lien waivers and Davis-Bacon papers, documents needed by North End to receive low interest loans. Although its original application to vacate the award also asserts that the arbitrator's conduct exhibits evident partiality, on appeal E.D.S. does not challenge the arbitrator's award on that basis. We affirm.

## FACTS

North End is a non-profit corporation that operates a medical clinic in St. Paul. The growth of the clinic required a move into a different building and renovation of a portion of the newly leased premises. North End hired an architect to draft the plans and specifications for the project.

North End accepted bids in June, 1985. E.D.S., a Minnesota corporation that has been in the general construction business for about 16 years, was the low bidder on the project at $293,000 and was awarded the contract. Its bid indicated that E.D.S. would substantially complete the work in 100 calendar days.

The parties entered into a contract consisting of the American Institute of Architects (AIA) "Standard Form of Agreement Between Owner and Contractor" and a list of supplementary conditions which included a liquidated damages clause and a lien waiver clause.

Construction was to commence August 19, 1985, but was delayed a few days. Work therefore began August 26, 1985, and the completion date was extended from November 25, 1985 to November 29, 1985. By letter, North End acknowledged the extension of the completion date and indicated that "December 5th, 1985 will be the official completion date that all liquidated damages will be based on." This gave E.D.S. 102 working days from actual commencement of the project before the liquidated damages clause would be effective.

E.D.S. claims that it encountered a number of problems during the project, relating to its discovery of unspecified joists within the existing walls, a delay in the receipt of the windows, and installation of the boiler. E.D.S. nevertheless indicated that it would not seek an extension of time and assured North End that it would meet the November 29th completion date.

Although renovation was not complete, North End had no choice but to move into the unfinished facility on December 7, 1985, because its prior lease had expired and its new lease had begun. At that time work was unfinished and a number of problems remained: the temperature was approximately 52 degrees until January 7, 1986; the x-ray room was being used as storage by E.D.S.; workmen were coming into the premises; and debris was scattered

about. The architect did not certify substantial completion until January 9, 1986.

The contract provided that "[a]ny claim to extension of time shall be made in writing to the Architect not more than twenty days after the commencement of the delay; otherwise it shall be waived." Despite this provision, in a letter dated January 28, 1986, E.D.S. requested a time extension of 25 days due to "delay caused by the owner refusing to allow our men to work on the uncompleted punch list items." In a subsequent letter, E.D.S. itemized delays from September and October, 1985, relating to the structural problems it had encountered and amended its request for an extension of time to 42 days. In response, the architect granted E.D.S. an extension of 12 days.

E.D.S. thereafter demanded arbitration and cited the nature of the dispute as: "Claim for extras, improper imposition of liquidated damages, acceleration and delay damages together with interest, costs and attorneys fees." North End answered and entered a "[c]laim for liquidated damages [or in the alternative for actual damages] together with costs, interest and attorney's fees."

An arbitrator was selected. He held a two day hearing considering documentary and testamentary evidence submitted by both parties. The arbitrator awarded North End $23,000 "per penalty clause," architectural fees of $2,000 and attorney's fees of $3,000. E.D.S. was also ordered to furnish lien waivers and to release Davis-Bacon papers to North End.

### ISSUE

Did the arbitrator exceed his powers?

### ANALYSIS

■ An arbitrator's award may be vacated on a limited number of grounds, including where the arbitrator exceeded his powers. Minn.Stat. § 572.19, subd. 1(3) (1986). The objecting party has the burden of proving the invalidity of the award. *Hilltop Construction, Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 239 (Minn.1982).

Absent an agreement limiting his authority, an arbitrator "is the final judge of both law and fact, including the interpretation of the terms of any contract * * *." *Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957), *quoted in Koranda v. Austin Mutual Insurance Co.*, 397 N.W.2d 357, 361 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987). An award may not be overturned even if a court believes it to be incorrect. *Grudem Brothers Co. v. Great Western Piping Corp.*, 297 Minn. 313, 316–17, 213 N.W.2d 920, 922 (1973).

The contract in this case contained the following paragraph:

**7.9   ARBITRATION**

**7.9.1**   All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof * * * shall be decided by arbitration * * * unless the parties mutually agree otherwise. * * * The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Each part of the arbitrator's decision is treated separately below.

*Damages*

The liquidated damages clause stated:

LIQUIDATED DAMAGES

It is understood and agreed that should the project not be completed within the time specified in the Contract, the actual damages sustained by the Owner due to such delay will be extremely difficult or impractical to determine. The Owner's * * * daily cost to rent the leased space within the Weyandt Building is established as the liquidated amount which the Contractor shall pay the Owner * * * for each day's delay in fully completing the project beyond the time specified in the Contract and until November 30, 1985. After November 30, 1985, the sum of $1,000.00 per day is established as the liquidated amount which the Contractor shall pay to the Owner * * * for each day's delay in fully completing the

project beyond the time specified in the Contract.

■ Liquidated damages may only be recovered by contract. In determining whether such a clause is valid, the language of the contract itself must be examined as well as the facts and circumstances under which it was made. *Schutt Realty Co. v. Mullowney*, 215 Minn. 340, 346, 10 N.W.2d 273, 276 (1943), *quoted in Meuwissen v. H.E. Westerman Lumber Co.*, 218 Minn. 477, 483, 16 N.W.2d 546, 549–50 (1944). Although prima facie valid, a liquidated damages provision is enforceable only where damages are not readily ascertainable and where the amount fixed is reasonable in light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances. *Gorco Construction Co. v. Stein*, 256 Minn. 476, 481–82, 99 N.W.2d 69, 74 (1959).

■ E.D.S. contends that the liquidated damages clause in this case represents a penalty and is unenforceable. It emphasizes that the $1,000 per day is greatly disproportionate to North End's actual damages and that the amount chosen is unreasonable. These arguments relate not to the issue of arbitrability but to the merits of the arbitrator's decision in this case. Given the broad scope of the arbitration provision in the contract and submission by the parties of this dispute to the arbitrator, we must conclude that the arbitrator acted within his authority.[1] The fact that the arbitrator referred to the liquidated damages clause as a "penalty clause" neither controls, nor permits an inference that the arbitrator ·exceeded his power. *See Hilltop Construction*, 324 N.W.2d at 239 ("A mere ambiguity in the opinion accompanying an award which permits an inference that the arbitrators may have exceeded their authority is no reason for refusing to enforce the award").

*Lien waivers*

■ The terms of the supplementary conditions of the contract required E.D.S.

to supply lien waivers. The arbitrator's award orders E.D.S. to "furnish lien waivers to [North End] signifying full payment of all costs." E.D.S. contends that the arbitrator exceeded his powers by requiring it to furnish lien waivers prior to receiving final payment. We agree with North End that the only reasonable interpretation of the award is that upon final payment North End will receive the lien waivers, as is customary in the construction industry, and as is provided by the contract.

*Davis-Bacon papers*

■ The award further required E.D.S. to release certain Davis-Bacon papers to North End. E.D.S. contends that the arbitrator exceeded his powers in making such an award because Davis-Bacon papers were not a requirement under the contract and were not included in either parties' written submission to arbitration.

The record contains a letter from E.D.S. to North End which states in pertinent part:

This letter will document the fact that we have on file in our office certain payroll forms related to the Davis Bacon Act.

\* \* \* \* \* \*

Where as these forms are not part of our contract, and they are for your benefit only, they will remain in our files until such time that E.D.S. Construction Company and North End Health Center have reached a conclusive settlement. Furthermore, these papers will remain in our files until such time that North End Health Center has made final payment to E.D.S. Construction Co.

In the event that litigation on our part becomes necessary, these papers will remain the property of E.D.S. Construction Co.

E.D.S admits that this issue was mentioned in passing during arbitration, but contends that it was not arbitrated by consent. North End disagrees and claims that

---

1. On appeal, North End asserts that the $1,000 represents double rent on the premises, a statement which E.D.S. strongly disputes. Again, this involves a fact question relating to the merits of the arbitrator's decision.

at the hearing the parties submitted the issue of the Davis-Bacon papers to the arbitrator. Given the above letter and the possible oral submission of the issue to the arbitrator, we conclude that it was within the arbitrator's power to resolve this dispute.

## DECISION

The district court's denial of the motion to vacate and its confirmation of the arbitrator's award is affirmed.